# Mardis *et al. v.* Sims, Admrx.

## *Action of Trover and Trespass.*

1. *Surety on mortgage debt; can not take property after payment of mortgage.*—Where, to secure a note which was executed by a maker and surety, the maker gives a mortgage which recites that he is indebted to the payee of the note by a note signed by sureties and that "the better to secure said creditors as well as to give indemnity to the sureties on said note and to secure any sum I now or may owe them or either of them before this note is due, I hereby bargain, sell and convey," etc. unto the payee of the note certain property; such mortgage, even though it may have secured any debt which the mortgagor might owe his sureties on the note at the time of its maturity, if the mortgage indebtedness is paid by the mortgagor before maturity and the mortgage is marked paid and sent to the surety, such mortgage passed no title or right of possession to the surety to the property conveyed therein; and such surety would have no right to take possession of such property in liquidation of an indebtedness which the mortgagor may have been due at the time of the payment of the mortgage.

2. *Action of trespass; when proof of plaintiff's physical condition*

Vol. 140.

[Mardis *ct al.* v. Sims, Admrx.]

*admissible.*—In an action of trespass to recover damages for the wrongful taking of personal property, it is permissible to show that at the time of the alleged trespass, the plaintiff was seriously ill which was known to defendants; such evidence being admissible in aggravation of the trespass.

3. *Equity pleading; manner of revivor of cause in name of administratrix.*—Where, after suit is brought, the plaintiff dies, such action may be revived in the name of the administratrix of the estate of the deceased plaintiff, upon oral motion made in the court for that purpose; and it is not necessary that the death of the plaintiff should be suggested in writing.

APPEAL from the Circuit Court of Blount.

Tried before the Hon. J. A. BILBRO.

This action was brought on November 26, 1901, by A. J. Sims, Jr., against S. L. Mardis, and others. The complaint contained two counts. The first count was in trover, seeking to recover for the wrongful conversion by the defendants of a cow, and 700 pounds of seed cotton. The second count was in trespass, and sought to recover damages for the wrongful taking of seed cotton.

The defendants pleaded the general issue, accord and satisfaction and justification; it being averred in special plea No. 3, by way of justification, that the property was taken under and by virtue of a mortgage which was executed by the plaintiff. The plaintiff filed a replication to this special plea, setting up the fact that the mortgage had been paid by the plaintiff prior to the taking of the property, and that the plaintiff did not owe anything on it at the time the property was so taken by the defendants. After the commencement of the suit and before the day of the trial, the plaintiff, A. J. Sims, Jr., died and his wife, Mary Sims, was duly appointed by the probate court of Blount county as the administratrix of the estate. As to reviving said suit in the name of the administratrix of plaintiff, the bill of exceptions contains the following recitals: "On the day the case was called for trial, and before any plea was filed, and before any appearance was made for the defendants in the cause, the attorney for the plaintiff moved the court that the cause be revived in the name of Mary Sims, as the administratrix of the estate of the said A. J. Sims, Jr., de-

ceased.    Plaintiff's attorney appearing for and on be-
half of said Mary Sims as said administratrix to be made
a party plaintiff as such administratrix.    This motion
was orally made, and the defendant limiting their ap-
pearance in the cause to the purpose of resisting such
motion, objected to the cause being revived upon said
motion, because the same was not made in writing as the
law required, and also upon the further ground that de-
fendant had no notice of such proceedings.    The court
overruled these objections and permitted the cause to be
then and there revived in the name of Mary Sims as the
administratrix of the estate of A. J. Sims, Jr., it being
shown to the court that the said Sims, the plaintiff in
this suit, was dead, and that said Mary Sims had been
duly appointed administratrix of the estate of said de-
ceased plaintiff.    To this action of the court the defend-
ants then and there excepted."

It was shown by the evidence that on January 2, 1901,
A. J. Sims, Jr. borrowed sixty dollars from the Bank
of Guntersville; that he gave a note for this amount
payable November 1, 1901, and that the defendant, S. L.
Mardis and one E. L. Bowerman were sureties on said
note.    That to secure the payment of said note, A. J.
Sims, Jr., executed a mortgage, which was in words and
figures as follows:    "Know all men by these presents,
That whereas the undersigned, A. J. Sims, Jr., is justly
indebted to the Bank of Guntersville in the sum of sixty
dollars, as evidenced by a certain promissory note of
even date herewith and which said promissory note is
signed by certain sureties whose names are affixed
thereto.    Now then, in consideration of the premises,
and to better secure said creditors, as well as to give in-
demnity to the sureties on said note, and to secure any
sum I now may owe them or either of them before this
note is due, I do hereby bargain, sell, and convey unto
the Bank of Guntersville, the following unencumbered
property, to-wit: [here follows description of property,
including a cow and the entire crop raised by the said
Sims], and hereby empower said payee or assigns to
take possession of said property at any time it shall
deem it necessary, and sell the same," etc.

The cow involved in the controversy was conveyed in said mortgage, and the cotton involved was raised by said Sims on his place.

The cashier of the Bank of Guntersville, after testifying to the execution of the note and mortgage as hereinabove stated, testified that on October 24, 1901, he, as said cashier, received by registered letter from A. J. Sims, Jr., the sum of sixty dollars to pay said note and mortgage; that on the same day, as such cashier, he received a check for sixty dollars sent to the bank by the defendant, S. L. Mardis, to pay said note and mortgage, and that the money was collected on said check of Mardis; that he as cashier of said bank applied the money received from Sims to the payment of the note and mortgage, stamped the note and mortgage "paid," and mailed the note and mortgage to the defendant Mardis as one of the sureties on the note; that the money paid to the bank on the check of S. L. Mardis was still held by the bank and had been so held since it was received. It was further shown that the defendants other than S. L. Mardis came to the house of A. J. Sims, Jr., in October, 1901, and took from the place of A. J. Sims, Jr., the property involved in this controversy. This property was taken against the protest of said A. J. Sims, Jr., and his wife.

Mary Sims, the wife of said A. J. Sims, Jr., being examined as a witness, testified to the taking of the property, and she was then asked the following question: "What was your husband's physical condition at this time?" The defendants objected to this question, on the ground that it called for illegal and irrelevant evidence. The court overruled the objection, and the defendant duly excepted. The witness answered that her husband was very weak at this time, and had to lay on the bed a great part of the time. There was other evidence tending to show that the said A. J. Sims, Jr., was in a very weak physical condition at the time of the taking of the property, and that he died some time in the following December.

The defendant introduced evidence tending to show that he had made advances to A. J. Sims, Jr., during the year 1901, and that at the time of taking the property

[Mardis *et al.* v. Sims, Admrx.]

of the defendants the said Sims was indebted to him for advances so made, and that his advances were greater than the value of the property so taken.

In the court's oral charge to the jury he instructed them as follows: "The mortgage to the Bank of Guntersville did not authorize the defendant, Mardis, to seize or take possession of the property described in the mortgage, for any debt that Sims, the mortgagor, might have owed Mardis as one of the sureties on the note of Sims to the bank, without the consent of said Sims."

To the giving of this portion of the court's oral charge the defendant separately excepted, and also separately excepted to the court's refusal to give, among others, the following written charges: (5.) "If the jury are reasonably satisfied from the evidence that plaintiff's intestate, A. J. Sims, Jr., was justly indebted to S. L. Mardis in a sum equal to or greater than the value of the property taken and that he received credit on his said indebtedness for the reasonable value of his said property, then you will not find against the defendants for the value of the property." (6.) "If the jury are reasonably satisfied from the evidence in this case that the said A. J. Sims, Jr., received credit for the reasonable and fair value of the property taken, on a just debt that he was then owing one of the defendants to this suit, the plaintiff is not entitled to recover the value of said property in this action."

There were verdict and judgment for the plaintiff. Defendants appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

EMERY C. HALL, for appellants.—The action should not have been revived upon the motion as made in this case, against the objections of the defendant.—Code of 1896, § 38; *Pope, Admr. v. Irby, Admr.*, 57 Ala. 105.

No special damages were claimed in the complaint, and any evidence as to the physical condition of the plaintiff at the time of the alleged wrongful taking of the property was wholly irrelevant, and should not have been admitted by the court against the objection of the

defendants.

The evidence must be relative to the issues; must tend to prove or disprove them. In this action the plaintiff was not entitled to recover any thing on account of his sickness which was not the consequence or result, either remote or proximate, of any act of any of the defendants. 1 Brick. Digest, §§ 75, 76, 78, p. 808; *Seals v. Edmondson,* 71 Ala. 509-513.

No counsel marked as appearing for appellee.

McCLELLAN, C. J.—The mortgage involved in this case was executed to the Bank of Guntersville, and not to Mardis; the bank was the mortgagee and not Mardis and the bank. The bank alone had the right to take possession of the property, and this right could only pass to another by its assignment. The mortgage secured the note which the mortgagor had executed to the bank, and any other debt that he, the mortgagor, should owe the bank at the time of the maturity of the note; and for the purpose of this appeal, it may be conceded, though we do not so decide, that it also secured any debt which the mortgagor might owe his sureties on the note at the time of its maturity. It also by its express terms, was to stand for the indemnification of those sureties in the event they paid the debt to the bank. But, for all this, it still remains that the bank was the sole mortgagee; it alone took title under the mortgage, and it alone had the right to take over the possession of the mortgaged property. It did not assign the mortgage, nor this right to take possession under it to Mardis, nor intend to do so, or do any act having that effect. To the contrary, when the mortgagor paid to it the amount of the note, the bank, as far as it could at least, cancelled the mortgage, stamped it "paid," and mailed this cancelled instrument to the surety, merely, it is to be presumed, for the purpose of advising the latter that his liability on the note was at an end. Even on the assumption we referred to above, that the mortgage to the bank was intended to secure and did, indirectly, so to speak, secure any indebtedness the mortgagor might owe the surety

[Mayor and City Council of Anniston v. Hurt, Admr. etc.]

at the note's maturity, and assuming further that he did at that time owe the surety a debt, the surety was without legal right to take possession of the property under the mortgage, because he was not the mortgagee, nor the assignee of the mortgagee. The mortgage itself passed no title nor right of possession to him, and there had been no assignment by the bank of the title and right of possession which the mortgage passed to it. To say the most, therefore, the facts to which we have alluded could only inure to the defendant's benefit by way of mitigating the damages inflicted on the plaintiff's intestate or, more accurately perhaps, in extenuation before the jury of the defendant's conduct in taking and carrying away plaintiff's intestate's property without right so to do. That part of the court's oral charge to which an exception was reserved and its refusal to give charges 5 and 6 requested by defendants, were in harmony with these views.

The fact that plaintiff's intestate was seriously ill at the time the defendants took the property from him was proper to go to the jury as matter in aggravation of the trespass; they being aware of the fact, and the property being taken against his protest.

There was no merit in the defendant's objection to the manner in which the death of the original plaintiff was suggested and the cause revived in the name of his administratrix.—Code, § 38.

Affirmed.